**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**District Judge Christine M. Arguello**

Civil Action No. 10-cv-03101-CMA

DANIEL L. ROSALES,

      Applicant,

v.

KEVIN MILYARD, and
JOHN SUTHERS, The Attorney General of the State of Colorado,

      Respondents.

---

### ORDER DENYING PETITION FOR HABEAS CORPUS

---

The matter before the Court is an Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254.  (Doc. ## 9 and 10.  The Court has determined it

can resolve the Application without a hearing.  *See* 28 U.S.C. § 2254(e)(2); Fed. R.

Governing Section 2254 Cases 8(a).

## I. BACKGROUND

On November 21, 2002, in Jefferson County District Court Case No. 01CR3022,

a jury found Applicant guilty of two counts of murder after deliberation, two counts of

felony murder, one count of first degree burglary, one count of second degree assault,

and one count of violating a restraining order.[1]  *See* Answer (Doc. # 30, at 1-2);

Application at 2; State Court Flat File at 151-160 and 163.

---

[1]   The underlying facts and proceedings, as summarized by the Colorado Court of
Appeals (CCA) in its decision on Applicant's direct appeal of his conviction are set forth in
footnote 1 of Attachment 1.

On November 26, 2002, the trial court sentenced applicant to two concurrent life sentences for murder, a concurrent prison term of thirty-two years for burglary, a consecutive term of sixteen years for the assault, and a concurrent term of eighteen months for violating the restraining order.  State Ct. Flat File at 163.  On direct appeal, the CCA affirmed and ordered the mittimus to include the order of restitution, *Rosales*, 134 P.2d at 436, and the Colorado Supreme Court (CSC) denied a petition for certiorari review, *Rosales v. People*, No. 05SC684 (Colo. May 22, 2006).

Applicant filed a Colo. R. Crim. P. 35(c) postconviction motion on May 7, 2007, *see* State Ct. Flat File at 293, that the trial court denied on August 10, 2007, *see id.* at 351-59.  The CCA affirmed the denial, *see People v. Rosales*, No. 07CA1881 (Colo. App. Mar. 26, 2009), and the CSC denied certiorari review, *Rosales v. People*, No. 2009SC409 (Colo. Sept. 7, 2010) (*en banc*).

## II.  HABEAS CLAIMS

Applicant, acting *pro se*, initiated this action on December 21, 2010.  The original Application and first Amended Application were insufficiently pled.  After two attempts by Applicant to amend and submit an application that complies with Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, on March 17, 2011, Applicant filed a Second Amended Application and a separate Petition, that includes a statement of facts in support of each claim that he raises.

 In the March 17 Petition, Applicant asserted the following claims:

(1)  Trial court error in allowing the jury instruction on self-induced intoxication;

(2)  Prosecutorial misconduct in closing argument;

(3), (4), and (5)  Trial court error in imposing restitution after Mr. Rosales had filed his notice of appeal violating double jeopardy laws and his right to due process;

(6)  Ineffective assistance of trial counsel for failing to: (i) investigate Mr. Rosales's intoxication the night of the murders; (ii) interview Mr. Rosales's girlfriend regarding his assault on her and to interview jail intake personnel regarding Mr. Rosales's intoxication level; (iii) present a provoked heat of passion defense; (iv) obtain independent blood analysis; (v) advise Mr. Rosales before he waived his right to testify that only one witness would testify for the defense; and (vi) object to the intoxication instruction, the prosecution's comments during voir dire and closing argument, and the prior act evidence, which was inadmissible under Colo. R. Evid. 404(b);

(7)  Trial court error in not holding an evidentiary hearing during the postconviction proceeding;

(8)  The postconviction court's violation of state civil and criminal rules in denying Mr. Rosales's request to amend the Rule 35(c) motion and for an evidentiary hearing; and

(9)  Ineffective assistance of postconviction counsel.

On March 22, 2011, Magistrate Judge Boyd N. Boland entered an order directing Respondents to file a Pre-Answer Response and address the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies under 28 U.S.C. § 2254(b)(1)(A), if Respondents intended to raise either or both of those defenses.  Respondents filed a Pre-Answer Response on April 6, 2011, conceding that the Application is timely and that Claims One, Two, Three, Four, Five, parts of Six, and Seven were exhausted, but arguing that parts of Claim Six and all of Claims Eight and Nine were procedurally barred from habeas review.  Applicant filed a Reply on May 3, 2011.

The Court reviewed the Application, Petition, Pre-Answer Response, and Reply and determined that Claims Eight and Nine failed to state cognizable federal habeas

claims.  As for Claim Six, the Court found that three of Applicant's ineffective assistance of counsel claims were procedurally barred from federal habeas review, including:

(1) counsel's failure to interview Applicant's girlfriend regarding the assault;

(2) counsel's failure to object to the prosecution's comments during voir dire; and

(3) counsel's failure to object to the prior act evidence that was ruled inadmissible.

## III.  LEGAL STANDARDS

### A.   *PRO SE* STANDARD OF REVIEW

Applicant is proceeding *pro se.*  The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."  *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that an applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  An applicant's pro se status does not entitle him to an application of different rules.  *See Montoya v. Chao*, 296 F.3d 952, 958 (10th Cir. 2002).

**B.   28 U.S.C. § 2254**

Section 2254(d) provides that a writ of habeas corpus may not be issued with

respect to any claim that was adjudicated on the merits in state court, unless the state

court adjudication:

> (1)   resulted in a decision that was contrary to, or involved an unreason-
> able application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).

The Court reviews claims of legal error and mixed questions of law and fact

pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir.

2003).  The threshold question pursuant to § 2254(d)(1) is whether Applicant seeks

to apply a rule of law that was clearly established by the Supreme Court at the time

his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).

The "review under § 2254(d)(1) is limited to the record that was before the state court

that adjudicated the prisoner's claim on the merits."  *Cullen v. Pinholster*, ---- U.S. ----,

131 S. Ct. 1388, 1398 (2011).  "Finality occurs when direct state appeals have been

exhausted and a petition for writ of certiorari from this Court has become time barred or

has been disposed of."  *Greene v. Fisher*, ---- U. S. ----, 132 S. Ct. 38, 44 (2011) (citing

*Griffith v. Kentucky*, 479 U.S. 314, 321, n.6 (1987)).

Clearly established federal law "refers to the holdings, as opposed to the dicta,

of [the Supreme] Court's decisions as of the time of the relevant state-court decision."

*Williams*, 529 U.S. at 412.  Furthermore,

clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).  *See id.* at 1018.  If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08.  Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.  *Carter* [*v. Ward*], 347 F.3d. [860,] 864 [(10th Cir. 2003)] (quoting *Valdez* [*v. Ward*], 219 F.3d [1222,] 1229-30 [(10th Cir. 2000)]).

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that

the relevant state-court decision applied clearly established federal law erroneously

or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 411.

"[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their

independent judgment would conclude the state court misapplied Supreme Court law."

*Maynard*, 468 F.3d at 671.  In addition,

> evaluating whether a rule application was unreasonable requires
> considering the rule's specificity.  The more general the rule, the more
> leeway courts have in reaching outcomes in case-by-case determinations.
> [I]t is not an unreasonable application of clearly established Federal law
> for a state court to decline to apply a specific legal rule that has not been
> squarely established by [the Supreme] Court.

*Harrington v. Richter*,  --- U.S. ---, 131 S. Ct. 770, 786 (2011) (internal quotation marks

and citation omitted).  The Court "must determine what arguments or theories supported

or . . . could have supported[ ] the state court's decision" and then "ask whether it is

possible fairminded jurists could disagree that those arguments or theories are

inconsistent with the holding in a prior decision of [the Supreme] Court."  *Id.*  "[E]ven a

strong case for relief does not mean the state court's contrary conclusion was

unreasonable."  *Id.* (citation omitted).  "Section 2254(d) reflects the view that habeas

corpus is a guard against extreme malfunctions in the state criminal justice systems, not

a substitute for ordinary error correction through appeal."  *Id.* (internal quotation marks

and citation omitted).

Under this standard, "only the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254."  *Maynard*, 468 F.3d at 671.

Furthermore,

> [a]s a condition for obtaining habeas corpus relief from a federal court, a
> state prisoner must show that the state court's ruling on the claim being

7

> presented in federal court was so lacking in justification that there was
> an error well understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Richter*, 131 S. Ct. at 786-87.

The Court reviews claims of factual errors pursuant to 28 U.S.C. § 2254(d)(2).

*See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).  Section 2254(d)(2)

allows a court to grant a writ of habeas corpus only if the state court decision was based

on an unreasonable determination of the facts in light of the evidence presented.

Pursuant to § 2254(e)(1), the Court must presume that the state court's factual

determinations are correct, *see Sumner v. Mata*, 455 U.S. 591, 592-93 (1982), and

Applicant bears the burden of rebutting the presumption by clear and convincing

evidence, *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997).  "The

standard is demanding but not insatiable . . . [because] '[d]eference does not by

definition preclude relief.'"  *Miller-El  v. Dretke*, 545 U.S. 231, 240 (2005) (quoting

*Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

A claim, however, may be adjudicated on the merits in state court even in the

absence of a statement of reasons by the state court for rejecting the claim.  *Richter*,

131 S. Ct. at 784 ("[D]etermining whether a state court's decision resulted from an

unreasonable legal or factual conclusion does not require that there be an opinion from

the state court explaining the state court's reasoning").  Furthermore, "[w]hen a federal

claim has been presented to a state court and the state court has denied relief, it may

be presumed that the state court adjudicated the claim on the merits in the absence of

any indication or state-law procedural principles to the contrary."  *Id.* at 784-85.

8

In other words, the Court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).   Therefore, the Court "must uphold the state court's summary decision unless [its] independent review of the record and pertinent federal law persuades [it] that [the] result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented."   *Id.* at 1178.  "This 'independent review' should be distinguished from a full de novo review of the [applicant's] claims."   *Id.* (citation omitted).   Likewise, the Court applies the AEDPA (Antiterrorism and Effective Death Penalty Act) deferential standard of review when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard.   *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005).   If a claim was not adjudicated on the merits in state court and, if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply.   *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## IV.  ANALYSIS

### A.   CLAIM ONE

Applicant asserts in Claim One that the trial court used a self-induced intoxication instruction for the jury that the CSC had found was incorrect and faulty.  Pet., Doc. # 9, at 7.  Applicant further contends, that although self-induced intoxication is not an affirmative defense in Colorado, it does operate to reduce the level of culpability

associated with a particular act, if the finder of fact determines the state has failed to satisfy its burden of proof as to the *mens rea* of intent.[2]  *Id.* at 8.

Applicant, relying on *People v. Versteeg*, 165 P.3d 760, 770 (Colo. App. 2006), argues that the self-induced intoxication instruction was incorrect because the instruction in his case, rather than focusing on whether he had in fact formed specific intent, improperly focused on whether, as a result of self-induced intoxication, he lacked the capacity to form specific intent.  *Id.*  Applicant further argues the instructions failed to indicate that the jury **must** consider evidence of self-induced intoxication because the culpable mental state of intent is an element of the charged offense.  *Id.*  Applicant also argues that the second part of the instruction is very confusing and misled the jury because the instruction suggests that "unless the prosecution proves beyond a reasonable doubt both that the defendant was intoxicated and that his intoxication was so severe that he could not form specific intent, the jury may not take evidence of intoxication into account during its deliberation."  *Id.* at 9.  Finally, Applicant asserts that the CCA admitted the instruction was in error, and an incorrect statement of law, but ignored the harm caused by the incorrect instruction.  *Id.*

Respondents argue that claims of erroneous jury instructions can result in the setting aside of a state conviction only if the errors rendered the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense.  Answer at 17-18. Respondents conclude that the jury instructions clearly set forth the presumption of

---

[2]   The relevant portions of the CCA's analysis and conclusions with respect to this issue as raised by Applicant in his direct appeal are set forth in footnote 2 of Attachment 1.

innocence and the jury had to consider all the evidence to determine whether the prosecution met its burden of proof.  *Id.* at 18.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  However, not every "ambiguity, inconsistency, or deficiency" in a jury instruction renders the instruction constitutionally infirm.  *Middleton v. McNeil*, 541 U.S. 433, 437 (2004).

It is not "the province of a federal habeas court to reexamine state-court determinations on state law questions."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). As a preliminary matter, "errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law."  *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (internal quotation marks and citations omitted); *Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995) ("A state trial conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial.").  Even if the alleged error committed by the trial court was a constitutional one, Applicant must demonstrate that the error had "a substantial and injurious effect in determining the jury's verdict," as required under the plain error standard of review.  *See Brecht v. Abrahamson,* 507 U.S. 619, 637-38 (1993).  To obtain relief, a habeas application must demonstrate that the erroneous instruction "by itself so infected the entire trial that the resulting conviction violates due process."  *Henderson v. Kibble,* 431 U.S. 145, 154 (1977).

11

The Colorado statute that defines first degree murder provides, in relevant part, that a person commits the crime of murder in the first degree if "after deliberation and with the intent to cause the death of a person . . . he causes the death of that person . . . ." Colo. Rev. Stat. § 18–3–102(1)(a).  The elements of "after deliberation" and "specific intent" both must be present in order to prove first degree murder.  *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005).

Although self-induced intoxication is not a defense to a criminal charge, a defendant may offer evidence of voluntary intoxication to negate intent, including the "after deliberation" element.  *Id.*  Evidence of voluntary intoxication is admissible if the intoxication is so overwhelming that a defendant lacked the mental ability to act intentionally or deliberately.  *See Harlan*, 8 P.3d 448, 471 (Colo. 2000), *overruled in part on other grounds*, *Miller*, 113 P.3d at 748.  The intoxication must be such that a defendant could not act intentionally because it destroyed defendant's ability to form a specific intent, *see Dolan v. People*, 449 P.2d 828, 835 (Colo. 1969), or a defendant was too drunk to form the state of mind required, *Gallegos v. People*, 411 P.2d 956, 961 (Colo. 1966), *superseded by statute on other grounds*, *People v. Thornton*, 929 P.2d 729, 732 (Colo. 1996).

Under Colo. Rev. Stat. § 18-1-804, evidence of self-induced intoxication may be offered only to negate the existence of specific intent and may not be offered as proof of a generally impaired mental condition.  The exclusion of evidence of intoxication, except as to specific intent, is supported by policy concerning the extent to which drunkenness can excuse criminal responsibility.  *See Bieber v. People*, 856 P.2d 811, 817 (Colo. 1993) (common knowledge that excessive use of drugs and liquor impairs the

perceptual, judgmental, and volitional faculties of the user and involves a degree

of moral culpability).  Therefore, excluding evidence of self-induced intoxication as a

general defense did not violate Applicant's right to a complete defense in this case.  *See*

*Janoushek v. Watkins*, 265 F. App'x 737 (10th Cir. 2008).

> In this case, the jury was instructed that they

> may consider evidence of self-induced intoxication in determining whether
> or not intoxication negates the existence of the particular state of mind of
> with intent, which is also known as specific intent or after deliberation, and
> with intent.  The prosecution has the burden of proving all of the elements
> of the crimes charged.  If you find the defendant was intoxicated to such a
> degree that he did not form the specific intent which is a required element
> of the crimes of first-degree murder, amended counts 1, 2, 3, and 4; first-
> degree burglary, Count 5; and second-degree assault, Count 7, you
> should find defendant not guilty of those charges.  Self-induced
> intoxication is not applicable to the state of mind of knowingly, which is
> an element of the general intent crimes of the lesser included offense
> of murder in the second degree, lesser included offense of first-degree
> criminal trespass, kidnapping, Count 6, violation of restraining order,
> Count 8; and violent crime enhancers, which are Counts 9 and 10.

*Rosales*, No. 01CR3022, Trial Tr., Nov. 20, 2002, at 63-64.

For the following reasons, Claim One lacks merit and will be denied.  First,

contrary to Applicant's argument based on *Versteeg*, the self-induced intoxication

instruction did not direct jurors to consider whether Applicant had the capacity to form

the requisite specific intent.  In keeping with *Versteeg,* the instruction correctly directed

jurors to determine if Applicant formed the specific intent.

As for Applicant's argument that the self-induced intoxication instruction was

erroneous in his case because the jurors were instructed that they **may** rather than

**must** consider evidence of self-induced intoxication when determining whether the

intoxication negates the specific intent, the argument is without basis.  Whether the

jurors were instructed that they may or must consider the self-induced intoxication evidence, at the end of the trial, the jury was instructed that they "received all of [the] evidence that [they] may properly consider to decide the case" and that their "decision must be made by applying the rules of law . . . to the evidence presented at the trial." *Rosales*, Trial Tr., Nov. 20, 2002, at 53.  The jury also was instructed to consider all the evidence in light of their observations and life experience.  *Id.* at 54.  The jury further was instructed the first day of the trial that they were to consider all the facts and circumstances which were shown by the evidence and then decide whether to believe all the testimony, part of it, or none of it.  Trial Tr., Nov. 12, 2002, at 21.

A reviewing court "presume[s] that the jurors conscientiously observed the instructions and admonitions of the court.  Speculation that this was not done cannot be employed in assailing the jury's verdict, in the absence of a showing of facts proving otherwise."  *United States v. Morris*, 623 F.2d 145, 148 (10th Cir. 1980) (citing *United States v. Cooper*, 464 F.2d 648 (10th Cir. 1972)).  Applicant has failed to present any facts demonstrating that the jury disregarded the instructions of the trial court to consider all evidence.

Furthermore, the remaining portion of this particular instruction reminded the jury that the prosecution must prove all of the elements of the charged crimes beyond a reasonable doubt, and charged the jury that if it found the defendant was intoxicated to such a degree that he did not possess the required mental state, they should find the defendant not guilty.  The Court finds no confusion with the second part of the instruction, as suggested by Applicant.  As stated above, Colorado law does not allow intoxication as a defense to a criminal charge unless the intoxication was not self-

induced.  However, if a self-induced intoxication is so overwhelming that a defendant could not act intentionally and his ability for a specific intent was destroyed, the self-induced intoxication may be considered.  Nothing in this instruction reduced the prosecution's burden of proof.

The Court also has reviewed with close scrutiny the CCA's opinion in Applicant's direct appeal regarding the self-induced intoxication instruction and finds nothing in the opinion that equates to an admission by the CCA that the instruction was an incorrect statement of law.

The Court, therefore, concludes Applicant has failed to demonstrate that the alleged erroneous instruction by itself so infected the entire trial that the resulting conviction violates due process.  Based on the above findings, the CCA's decision, therefore, is not contrary to, or an unreasonable application of, established Supreme Court precedent.  Claim One fails to assert a claim for federal habeas relief and is denied for lack of merit.

**B.    CLAIM TWO**

Applicant asserts in Claim Two that in closing argument the prosecution urged the jury to nullify the law regarding self-induced intoxication, thereby committing reversible error.  Pet. at 12.  Applicant further contends that the CCA acknowledged the inappropriateness of the prosecution's closing argument comments that depicted an acquittal of first degree murder as a reward for drinking and dismissal of accountability by every intoxicated person.  *Id.* at 13.  Applicant also contends he was prejudiced by the CCA's review, because trial counsel did not raise the issue and as a result the direct

appeal review was limited to a plain error standard.[3] Finally, Applicant contends that

Justice Bender stated in the CSC's denial of Applicant's petition for certiorari review

that he would have granted the Applicant's writ due to nullification.[4] *Id.* 13-14.

Respondents argue that trial counsel's plea to the jury in closing (that he should

be convicted of second degree murder because he was intoxicated at the time he

committed the murders) allowed the prosecution to argue in rebuttal that Applicant's

level of intoxication did not negate specific intent and/or deliberation in advance.

Answer at 26. Respondents further contend that Applicant's jury nullification argument

is without basis because the prosecution did not argue the jury should disregard the trial

court instructions. *Id.* at 27.

Habeas relief is available for prosecutorial misconduct only when the misconduct

is so egregious that it renders the entire trial fundamentally unfair. *See Donnelly v.

DeChristoforo*, 416 U.S. 637, 645-48 (1974). In order to determine whether

prosecutorial misconduct rendered the trial fundamentally unfair, the Court must

consider "the totality of the circumstances, evaluating the prosecutor[s'] conduct in the

context of the whole trial." *See Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir.

1998). The prosecution is forbidden from deliberately deceiving the court and jury.

*See Gray v. Netherland*, 518 U.S. 152, 165 (1996). Applicant bears the burden of

---

[3] The CCA's decision with respect to the prosecutorial misconduct claim, as addressed in Applicant's direct appeal, is set forth in footnote 3 of Attachment 1.

[4] Applicant misreads the CSC *en banc* order denying his petition for certiorari review in his direct appeal. Justice Bender indicated only that he would grant certiorari review of the petition so the Court could address "whether the state's closing argument urging the jury to nullify the law regarding self-induced intoxication was reversible error." *Rosales*, No. 05SC684. Justice Bender did not state he would reverse and remand with respect to the nullification issue.

establishing a claim of deception, which the Court reviews *de novo*.  *See Foster v. Ward*, 182 F.3d 1177, 1191-92 (10th Cir. 1999).

"Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding."  *United States v. Young*, 470 U.S. 1, 11 (1985).  The courts must "consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly."  *Tillman v. Cook*, 215 F.3d 1116, 1129 (10th Cir. 2000) (quoting *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998), *cert. denied*, 526 U.S. 1025 (1999)).  The federal habeas court does not consider a prosecutor's statement or argument "word by word in a vacuum."  *Paxton v. Ward*, 199 F.3d 1197, 1217 (10th Cir. 1999).

In making this assessment, a court should examine whether "the prosecutor's argument . . . manipulate[d] or misstate[d]" the evidence, "whether it implicate[d] other specific rights of the accused such as the right to counsel or the right to remain silent," whether "the objectionable content was invited by or responsive to the opening summation of the defense," and whether "[t]he weight of the evidence against applicant was heavy."  *Darden v. Wainwright*, 477 U.S. 168, 181-82 (1986).  "[A]ny cautionary steps-such as instructions to the jury-offered by the court to counteract improper remarks," are also relevant.  *Bland v. Sirmons*, 459 F.3d 999, 1024 (10th Cir. 2006) (internal quotation marks and citation omitted).  "Inquiry into fundamental fairness requires examination of the entire proceedings," and "[c]ounsel's failure to object to the comments, while not dispositive, is also relevant to a fundamental fairness assessment."  *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (citations omitted).

17

"[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden*, 477 U.S. at 181 (internal quotation marks omitted). Rather, "[t]he ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." *Bland*, 459 F.3d at 1024.

A review of the trial court's alleged error is subject to the plain error test. Colorado's plain error test is rooted in due process. *See People v. Kruse,* 839 P.2d 1, 3 (Colo. 1992) ("Plain error occurs when . . . the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." (internal quotation marks omitted)).  Because there is no practical distinction between Colorado's plain error test and the federal due process test that requires reversal when error "so infused the trial with unfairness as to deny due process of law," *Estelle,* 502 U.S. at 75 (internal quotation marks and citation omitted), the deferential standard of review applies unless the CCA unreasonably applied federal due process law, *see Thornburg v. Mullin*, 422 F.3d 1113, 1124-25 (10th Cir. 2005) (citing 28 U.S.C. § 2254(d)).

The trial court instructed each of the juror's that in closing the "attorneys will have an opportunity to summarize the case for you and to present to you what each attorney or each side believes that the evidence has proven or not proven.  As I also indicated to you, this is not part of the evidence in the case."  Trial Tr., Nov. 20, 2002, at 77.  Jurors are presumed to follow the instructions given and give less weight to counsel's arguments.  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Boyde v. California*, 494 U.S. 370, 384 (1990) (explaining that "arguments of counsel generally carry less weight with a jury than do instructions from the court").

18

The Court also discerns no basis for finding the prosecution's comments amounted to jury nullification.  A nullification is an action that impedes or attempts to prevent the operation or enforcement of the law.  One court has defined jury nullification as

> a violation of a juror's oath to apply the law, as instructed by the court-in the words of the standard oath administered to jurors in the federal courts, to "render a true verdict according to the law and the evidence."  We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent.

*United States v. Thomas*, 116 F.3d 606, 614 (2nd Cir. 1997) (footnote and citation omitted).

Even if the prosecutors' comments were improper, they did not infuse the trial with unfairness and result in a denial of due process of law.  Any prejudicial effect of the prosecutors' comments is diminished by the overwhelming evidence of Applicant's guilt, as set forth below under the discussion addressing Claim Six.

Having reviewed the record, the Court finds no convincing evidence that the prosecution's acquittal comment during closing argument was so egregious as to render the entire trial fundamentally unfair.  The CCA decision regarding this claim, therefore, did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Claim Two, therefore, fails to assert a claim for federal habeas relief and is denied for lack of merit.

## C.     CLAIMS THREE, FOUR, AND FIVE

In Claims Three, Four, and Five, Applicant asserts that (1) the trial court did not

have jurisdiction to impose restitution, (2) the sale of his house satisfied the restitution,

and (3) the restitution violated the Double Jeopardy Clause and his due process rights.

Pet. at 15-16.

A restitution payment or fine is not the sort of significant restraint on liberty

contemplated in the "in custody" requirement of 28 U.S.C. § 2254(a).  *See Erlandson*

*v. Northglenn Municipal*, 528 F.3d 785, 788 (10th Cir. 2008), *cert. denied*, 129 S. Ct.

928 (2009) (citing *Obado v. New Jersey*, 328 F.3d 716, 718 (3d Cir. 2003)).  The

"in custody" language of § 2254 is jurisdictional.  *Id.*  Applicant, therefore, may not utilize

a § 2254 action to seek removal of the alleged restitution requirement from his state

conviction mittimus.  *Id.*  The restitution claims are dismissed for lack of jurisdiction.

## D.     CLAIM SIX

In Claim Six, Applicant asserts seven ineffective assistance of counsel claims,

including trial counsel's failure to:

(i)      investigate Mr. Rosales's intoxication the night of the murders;
(ii)     interview jail intake personnel regarding Mr. Rosales's intoxication level;
(iii)    present a provoked heat of passion defense;
(iv)    obtain independent blood analysis;
(v)     advise Mr. Rosales before he waived his right to testify that only one witness would testify for the defense;
(vi)    object to the intoxication instruction; and
(vii)   object to the prosecution's comments during closing argument.

At the time Applicant was convicted, it was clearly established that a defendant

has a right to effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S.

668 (1984).  To establish that counsel was ineffective, Applicant must demonstrate both

that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  *See id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within a 'wide range' of reasonable professional assistance."  *United States v. Rushin*, 642 F.3d 1299, 1306 (10th Cir. 2011) (quoting *Richter*, 131 S. Ct. 770, 787 (2011) (citation omitted)).  It is an applicant's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances, *see Strickland*, 466 U.S. at 689, and that the errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Rushin*, 642 F.3d at 1307 (quoting *Richter*, 131 S. Ct. at 787) (emphasis and citation omitted).  An applicant must show counsel failed to act "reasonably considering all the circumstances."  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland*, 466 U.S. at 688, 690).

Under the prejudice prong, an applicant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  "The likelihood of a different result must be substantial, not just conceivable."  *Richter*, 131 S. Ct. at 791-92 (citing *Strickland*, 466 U.S. at 693).

Furthermore, under AEDPA, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard," which is the

21

question asked by an appellate court "on direct review of a criminal conviction in a United States district court." *Id.* at 785. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 788.

If Applicant fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed. *See Strickland*, 466 U.S. at 697. Also, ineffective assistance of counsel claims are mixed questions of law and fact. *See id.* at 698. Pursuant to § 2254(e)(1), the factual findings of the state courts[5] are presumed correct, and Applicant bears the burden of rebutting this presumption by clear and convincing evidence.

### 1.    Subclaims (i, ii, and iv) – Investigate and Interview / Expert and Obtain Independent Blood Analysis[6]

Applicant argues that trial counsel never investigated his history of depression, drug and alcohol abuse, and a past head injury. Pet. at 28. Applicant further argues that trial counsel called only one witness and relied entirely on the prosecution's witnesses to show hints of intoxication. *Id.* at 22-23. Applicant also contends that Max Harman and Robben Stone would have testified and confirmed that Applicant was staggering and slurring his words, and that the bartender would have testified that Applicant was slurring his words and that she offered him water instead of an alcoholic

---

[5]   With respect to Applicant's ineffective assistance of counsel claims, the relevant portions of the CCA's analysis are set forth in footnote 5 of Attachment 1.

[6]   With respect to Applicants **subclaims i ii, and iv** (investigation and interview claims) the relevant portions of the CCA opinion are set forth in footnote 6 of Attachment 1.

drink.  *Id.* at 19.  Applicant further asserts that counsel did not obtain a copy of his bar tab from either of the bars where he was drinking prior to the assault and murders.  *Id.*

Applicant contends that the intake case manager at the Jefferson County Jail, Connie, told him that it did not surprise her that he did not remember talking with her when he was booked into jail.  *Id.* at 21.  Applicant also asserts that Connie told him he was "so out of it" and she was not surprised because his Blood Alcohol Content (BAC) was so high.  *Id.*  Applicant contends that Connie's testimony would have easily changed the verdict to a lesser included offense.  *Id.*

"The duty to investigate derives from counsel's basic function . . . to make the adversarial testing process work in the particular case."  *Williamson v. Ward,* 110 F.3d 1508, 1514 (10th Cir. 1997) (internal quotation marks omitted).  "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Id.* (internal quotation marks omitted).  "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Strickland,* 466 U.S. at 690-91.

### a)   Subclaims (i and ii) – Investigate and Interview

First, obtaining copies of Applicant's bar tabs from both of the bars he frequented the night prior to the murders and assault does not fit the status of a necessary investigation.  A bar tab does not itemize specifically who had an alcoholic beverage but only who paid for beverages or possibly food.  The copy of the credit card statement

23

Applicant attached to his Application shows only the total amount that was charged to his credit card by Devon's Pub on November 9, 2001.  *See* Application (Doc. # 1, (original application), at 54, Attach. 6.  Thus, trial counsel's decision that an investigation of the bar tabs was not necessary is a reasonable decision.

Second, nothing Applicant presents to the Court indicates trial counsel was ineffective in not investigating Applicant's alcohol and drug abuse, depression, or brain injury.  Applicant attached a list of notes to his Traverse that allegedly trial counsel had written.  The attachment appears to be in support of his alleged problems with drug and alcohol abuse.  The notes vaguely state that on Christmas day someone was removed from an airplane, that someone blacks out eighty percent of the time, and that Katie Rodgers and Andy Loss would testify Applicant is subject to blacks out.  Traverse at 56-57, Attach. 4 and 5.  Applicant, however, fails to provide an affidavit by Katie Rodgers and Andy Loss stating they were willing to testify but were not asked to do so by trial counsel, and what their proposed testimony would have been.

Furthermore, although Applicant contends there were individuals who stated, during discovery, that he was depressed, drunk the night of the murders and assault, and threatened to kill himself, he does not assert that these individuals were willing to testify but were not asked to do so by trial counsel.  Applicant also does not assert what testimony an expert would have presented if he had been asked to assess Applicant's drug and alcohol abuse, depression, and brain injury.  Applicant has failed to provide sufficient evidence to overcome the strong presumption that trial counsel's decision to not proceed with an investigation regarding Applicant's alleged black outs was outside the "wide range" of reasonable professional assistance.  *Rushin*, 642 F.3d at 1306.

Third, as for the case manager at the Jefferson County Jail, Applicant fails to provide an affidavit stating her proposed testimony and that she was willing to testify but was not asked to do so.  Applicant does not demonstrate that trial counsel's decision not to interview the case manager or, after having interviewed her, not to call her as a potential witness, was unreasonable.

Fourth, in his opening brief on direct appeal, Applicant referred only to Jeff Harmon's affidavit, which addressed Applicant's level of intoxication on November 8, 2001, the night before the murders and assault.  Pre-Answer Resp. (Doc. # 19-5), Ex. 5A at 11; Application (Doc. # 1) at 45, Attach. 1.  Mr. Harmon attested that Applicant was slurring his speech and having trouble standing straight or walking, and that he asked someone else to drive Applicant home.  (Doc. # 1 at 45.)  Mr. Harmon did not state that he was willing to testify and was not asked.  *Id.*  Applicant did not refer, in the opening brief, to any other affidavits by individuals who would attest to his level of intoxication on November 8, 2001.

Mr. Harmon's testimony is similar to the testimony provided by other witnesses regarding Applicant's level of intoxication the night of the murders and assault.  Overall, the testimony given by different witnesses described Applicant as slurring his words but being understandable, unsteady when he walked but able to drive a vehicle on at least two occasions earlier in the evening, indulging in several alcoholic drinks over the course of the evening, including liquor and beer, possibly snorting some cocaine, and eventually having someone drive him home between 11:00 p.m. and midnight.  Trial Tr., Nov. 13, 2002, at 208-12, 264; Trial Tr. Nov. 14, 2002, at 104, 107, 114, 127, and 133-35; Trial Tr. Nov. 20, 2002, at 13-19.  Based on a review of the testimony given at trial

and the substance of Mr. Harmon's testimony, the Court finds Applicant was not prejudiced by trial counsel's failure to have Mr. Harmon testify.

Even if the Court were to consider Robben Stone's affidavit, which was not submitted in support of the direct appeal, nothing in the affidavit would demonstrate that Applicant was prejudiced by trial counsel's failure to have Mr. Stone testify.  Mr. Stone attests that he and Applicant drank three pitchers of beer and did a few shots of Cuervo over a period of about two hours.  Application at 46, Attach. 2.  Mr. Stone further attests that when he left Applicant he was slurring his words and was staggering a little bit.  *Id.* Mr. Stone also attests that he would have testified but was not asked to do so by counsel.  *Id.*  Mr. Stone's affidavit, like Mr. Harmon's, provides no more than what witnesses presented during the trial.

Finally, during an interview with an investigator for the Jefferson County District Attorney, a bartender from the bar where Applicant was the night of the assault and murders, stated she talked with Applicant for an hour.  Application at 48, Attach. 4. The bartender further stated that during this time Applicant was mellow and laid back and drank a few shots, but when he started to slur his words and ordered another drink she suggested he drink water, which he did.  *Id.*  Nothing the bartender stated contradicted what was heard during the trial.  To the contrary, the bartender indicated that Applicant had stopped drinking and was only drinking water when she talked with him.  Based on a review of the testimony given at trial, and the substance of the bartender's interview, the Court finds Applicant was not prejudiced by trial counsel's failure to have the bartender testify.

### b)      Subclaim (iv) – Expert/Independent Blood Analysis

Applicant contends that trial counsel failed to present the BAC report to the jury and to have an expert provide a "scientific explanation on addiction theories" to show how intoxicated he was.  Pet. At 19; Traverse at 14.  Applicant fails to explain with any detail what the expert testimony would have shown regarding both his level of intoxication at the time he assaulted his girlfriend and murdered his estranged wife and her boyfriend, and his ability or inability to form the required specific intent.

The Court further notes that, during a hearing on a motion to suppress Applicant's statements to the police, an expert witness for the prosecution provided testimony regarding the effects of drinking alcohol.  Trial Tr., June 21, 2002 Hr'g, at 19-74.  The expert, a specialist in addiction psychiatry, testified that he had reviewed (1) reports of different witnesses who had known Applicant throughout his life, (2) investigator's reports of different witnesses, and (3) academic material regarding the most current academic thoughts on alcohol induced blackouts and tolerance to alcohol.  *Id.* at 50.  During extensive direct, cross, and redirect examination, the expert testified that Applicant did not display severe intoxication symptoms at the time his BAC was .3, which indicated that he had a high tolerance to alcohol.  *Id.* at 54.  Based on the witness and police reports that described Applicant as slurring his words, being somewhat unsteady on his feet, and emotionally disinhibited, the expert further concluded that Applicant was moderately impaired.  *Id.* 51-52.  Finally, the expert testified that Applicant showed a rational process when, after he committed the murders, he told members of his family that he was considering suicide but did not attempt suicide.  *Id.* at 53.

On cross-examination, trial counsel questioned the expert about whether someone who had quit drinking alcohol for sixty to ninety days would have a high tolerance for alcohol if he started drinking again. *Id.* at 67-68. The expert responded that sobriety of only sixty to ninety days would most likely not affect the individual's high tolerance and that an assessment of the tolerance is demonstrated by a comatose state, vomiting, and the inability to ambulate and retain urine and feces. *Id.* at 68.

Applicant has failed to state with any specificity how or what an expert would have presented that would counter what the prosecutor's expert presented during the pretrial hearing. This failure, together with trial counsel's awareness of what an addiction psychiatry expert for the prosecution would testify to at trial, leads the Court to conclude that there is no basis for finding that trial counsel was ineffective in not having a scientific expert testify regarding Applicant's level of intoxication and ability to form specific intent.

As for the BAC results, the report was based on blood that was drawn from Applicant three different times between 2:29 p.m. and 3:15 p.m. on November 9, 2001. The assault and murders were established to have taken place no later than a little after 2:00 a.m. on November 9, 2001, *see* Trial Tr. Nov. 13, 2002, at 101, about twelve hours before the first blood draw was done. Applicant fails to demonstrate the relevancy of the BAC report to the level of his intoxication at the time of the murders and assault or what a separate blood analysis would have shown to counter a finding that he had the specific intent to murder his estranged wife and her boyfriend. The Court finds no basis for finding trial counsel was ineffective in not presenting the BAC results at trial.

28

### c)      Lack of Prejudice

Even if Applicant had shown that trial counsel did not act reasonably in failing to investigate further these issues, Applicant was not prejudiced by trial counsel's actions. The evidence against Applicant was overwhelming.  Testimony was presented that over the ten to eleven years prior to the murders Applicant drank on a regular basis, and on many occasions quite heavily, and when drinking beat his wife and/or made disparaging remarks about his wife.  Trial Tr., Nov. 15, 2002, at 170-71, 188-194; Trial Tr., Nov. 19, 2002, at 95 and 104.  Witnesses also testified that, especially during the months just prior to murdering his estranged wife and her boyfriend, and after she moved out, Applicant drank heavily, was angry about his wife leaving, and made even more disparaging remarks about her and her boyfriend.  Trial Tr., Nov. 15, 2002, at 204-10; Trial Tr.; Nov. 18, 2002, at 12-17, 20-22, 25, 39; Trial Tr., Nov. 19, 2002, at 89 and 107. Witnesses also testified that Applicant had stated to them that he wanted to kill his estranged wife and was jealous of her boyfriend.  Trial Tr., Nov. 15, 2002, at 174-76; Trial Tr., Nov. 18, 2002, at 62, 68-69.  Finally, forensic evidence indicated that the two locks on the wife's apartment door were shot off with one shotgun shell each and the victims were shot and killed in their bedroom with one shotgun shell each.  Trial Tr., Nov. 14, 2002, at 138-204.  These facts indicate that Applicant was able to efficiently reload the shotgun after shooting the locks off the door, in order to proceed to the bedroom and shoot the victims before they could escape the room.

2.     **Subclaim (iii) – Failure to Present a Provoked Heat of Passion Defense**

Applicant asserts that trial counsel was ineffective because he did not pursue a heat of passion defense.  Pet. at 22.  Applicant argues that, at the time he entered his estranged wife's apartment, he believed the boyfriend would not be there because he had heard the boyfriend was in California.  *Id.*  He further argues that seeing his wife in bed with another man so surprised and overwhelmed him that he lost control, *i.e.*, the sudden heat of passion escalated to "indescribable proportions."  Pet. at 16 and 22.  In the Traverse, Applicant contends that the heat of passion defense is supported by his girlfriend's testimony that (1) she had never seen Applicant in such a fit of rage when he attacked her and that, when he left with the shotgun, she thought he was going to kill himself, and (2) Applicant became enraged and beat her because she told him that she had participated in a sexual act with two other individuals.  Traverse at 15-16.

Specifically addressing Applicant's heat of passion claim, the CCA found as follows:

IV. Failure to Present a Heat of Passion Defense

Defendant contends that his counsel was ineffective for failing to present the defense that he committed the crimes under a heat of passion.  We disagree.

Counsel cannot be deemed ineffective for failing to present a defense that is not supported by the evidence.  The evidence in this case included that defendant was enraged when he beat his girlfriend, left her, and obtained a shotgun en route to the home of his estranged wife.  There, he shot the locks off the door and reloaded the shotgun before entering her bedroom and killing her and another man.  These facts do not support a theory that defendant committed these crimes in a sudden heat of passion after a highly provoking act.  *See People v. Valdez*, 183 P.2d 720, 723 (Colo. App. 2008).

*Rosales*, No. 07CA1881 at 16-17.

Under Colorado law, second degree murder is mitigated if it was "performed upon a sudden heat of passion, caused by a serious and highly provoking act of the intended victim, affecting the defendant sufficiently to excite an irresistible passion in a reasonable person." Colo. Rev. Stat. § 18-3-103(3)(b).

A review of the trial transcript indicates that during trial counsel's cross examination of Applicant's girlfriend about Applicant's demeanor during and after he beat her, she did testify that Applicant was "enraged and had no control," "it didn't look like he knew what was going on," "it wasn't even like it was him," and "it was just rage and he was kind of fumbling around." Trial Tr., Nov. 13, 2002, at 267-68. But even this testimony does not indicate a highly provoking act by either Applicant's estranged wife or boyfriend that would support a finding that Applicant acted as a result of a sudden heat of passion.

Before murdering his estranged wife, Applicant had known for at least several months that she was living with another man. Applicant also had mentioned on more than one occasion, months before the murders, that he wanted to kill his wife. Applicant left his home with a shotgun and shotgun shells, drove his girlfriend's truck to his wife's apartment, took the shotgun and shells with him, shot off the two locks on the apartment door, entered the apartment, reloaded his shotgun, and with only two shots murdered his wife and her boyfriend. The evidence was overwhelming that Applicant intended to murder his wife before he even entered the bedroom in her apartment.

### 3.    Subclaim (v) – Failure to Advise that Only One Witness Would Be Called for Defense

Applicant argues that trial counsel listed seventeen people on the defense witness list, but he called only one witness.  Pet. at 22.  He further argues trial counsel threatened that, if Applicant elected to testify he would "walk out."  *Id.*  Applicant contends that he would not have waived his right to testify had he known only one witness would testify.[7]  *Id.*  Applicant further contends he would have testified about how much he had drunk on November 8, 2001, and his use of cocaine for three days prior to the murders and assault, which would have corroborated all the testimony given at trial.  *Id.*  Applicant also states that he would have testified regarding his depression and black outs.  Traverse at 16.

The Trial Court thoroughly advised Applicant of his right to testify and the ramifications of testifying and gave him time overnight and the following day to talk to his lawyer and to consider his options.  When asked if his decision was made of his own free will, without hesitation, Applicant responded to the trial court that he had not been pressured or coerced into deciding not to testify.  At no time during the remainder of the trial, even after discovering that only one witness would be presented in his defense, did Applicant attempt to inform the trial court that he had changed his mind and wished to testify.  Finally, even if trial counsel's decision to present only one witness was unreasonable, based on the overwhelming evidence against Applicant, he was not prejudiced by trial counsel's decision.

---

[7]   The CCA's analysis and ruling on the Applicant's right to testify claim and the relevant portions of the trial court's advisement regarding his right to testify can be found in footnote 7 of Attachment 1.

**4.      Subclaims (vi and vii) – Intoxication Instruction / Prosecution's Comments[8]**

Based on this Court's findings above in sections "A. Claim One" and "B. Claim Two," and the CCA's summarization, the Court finds that the outcome would not have been different even if trial counsel had objected to the intoxication instruction and the prosecutor's closing remarks.  Even if trial counsel's actions were unreasonable, based on the overwhelming evidence against Applicant, he was not prejudiced by trial counsel's failure to object.

**5.      Conclusion**

Based on the above findings, Claim Six will be dismissed for lack of merit because:

1.      Applicant fails to demonstrate by clear and convincing evidence that trial counsel was ineffective in failing to interview and have other individuals, including an expert, testify regarding his level of intoxication and in failing to present the results of the BAC analysis.

2.      Applicant fails to demonstrate by clear and convincing evidence that trial counsel was ineffective in failing to present a heat of passion defense.

3.      Applicant fails to demonstrate by clear and convincing evidence that trial counsel was ineffective in failing to inform him that he would only present one witness.

---

[8]   The CCA's analysis and ruling on Applicant's contention that the trial court erred in giving the intoxication instruction and in denying his claim that counsel was ineffective for failing to object to the prosecutor's argument concerning the intoxication defense are set forth in footnote 8 of Attachment 1.

4.      Applicant fails to demonstrate by clear and convincing evidence that trial counsel

was ineffective in failing to object to the intoxication instruction or to the prose-

cution's comments in closing argument.

Accordingly, as to each argument, the CCA's decision is not contrary to, or an

unreasonable application of, established Supreme Court precedent.

## E.      CLAIM SEVEN

Applicant argues that he was denied due process in his postconviction

proceeding when the court denied him an evidentiary hearing regarding his numerous

ineffective assistance of counsel claims. Pet. at 27.  Applicant contends that the court

made incorrect factual findings regarding the CCA's opinion in Applicant's direct appeal

and whether Applicant's BAC levels were presented to the jury.  *Id.*  Applicant also

contends that the court never addressed trial counsel's failure to: (1) object to the

improper comments made by the prosecution in closing; (2) obtain an expert witness

regarding his alcoholism, depression, and brain injury; (3) obtain an expert witness

regarding his ability to form specific intent; and (4) investigate a heat of passion

defense.  *Id.* at 28.  Applicant further contends that the court's Colo. R. Crim. P. 35(c)

review was incorrect, only addressed a few issues, and did not meet the statutory

standards.

The CCA found as follows regarding the trial court evidentiary hearing:

> When a claim of ineffective assistance of counsel is raised in a
> postconviction motion, a district court may deny relief without a hearing
> if the allegations are conclusory or the record clearly establishes that the
> defendant is not entitled to relief.  *See Ardolino*, 69 P.3d at 77 (denial
> of postconviction claim for ineffective assistance of counsel without a
> hearing is justified if, but only if, the record establishes that defendant's
> allegations, even if proven true, would fail to establish one or the other

prong of *Strickland* test); *Moore v. People*, 174 Colo. 570, 571-72, 485
P.2d 114, 115 (1971) ("[b]are allegations of incompetency of counsel are
not sufficient to entitle a defendant to an evidentiary hearing"; defendant
did not allege "how any of these matters might have had any bearing on
the outcome of the trial"); *People v. Lopez*, 12 P.3d 869, 871 (Colo. App.
2000).

*Rosales*, No. 07CA1881 at 4-5.

First, to the extent that Applicant challenges the review of his Rule 35(c)

postconviction motion based on statutory standards, his claim is not cognizable in a

federal habeas proceeding.  *See Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998)

(holding petitioner may not challenge state court's denial of postconviction evidentiary

hearing because "federal habeas corpus relief does not lie for errors of state law").

Second, Applicant has failed to demonstrate in this Court that trial counsel was

ineffective.  Even if trial counsel's acts or decisions were unreasonable, based on

the overwhelming evidence of guilt he was not prejudiced by trial counsel's acts.  The

denial of an evidentiary hearing in Applicant's postconviction proceeding did not violate

his due process rights.  The CCA's decision, therefore, is not contrary to, or an

unreasonable application of, established Supreme Court precedent.  Claim Seven

will be dismissed for lack of merit.

## V. ORDERS

Based on the above findings it is

ORDERED that the "Application for a Writ of Habeas Corpus Pursuant to 28

U.S.C. § 2254" (Doc. # 9) and "Petition for Writ of Habeas Corpus Sec. 2254" (Doc.

# 10, are DISMISSED WITH PREJUDICE.  It is

FURTHER ORDERED that a certificate of appealability shall not issue because Applicant has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c).  It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order is not taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962). If Applicant files a notice of appeal he must also pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.  It is

FURTHER ORDERED that Applicant's request for appointment of counsel (Doc. No. 41) is DENIED AS MOOT.

DATED:  March __29__, 2013

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

## **ATTACHMENT 1**

FN 1: The underlying facts and proceedings, as summarized by the Colorado Court of Appeals (CCA) in its decision on Applicant's direct appeal of his conviction, are as follows:

> After beating his girlfriend, defendant took a shotgun and a box of shotgun shells and drove to the apartment of his estranged wife.  At the apartment complex, he parked the car to facilitate a quick departure and made several phone calls to his wife.  Receiving no answer, he then used two shots to disable two locks on the apartment door and entered the apartment.  On the way to the bedroom, he reloaded the gun; he entered the bedroom and shot his estranged wife and the man she had been dating, killing both.  Defendant picked up the expended shotgun shells, left the apartment, and drove away.  He was later arrested.

> Defendant was charged with two counts of first degree murder after deliberation, two counts of first degree felony murder, one count of first degree burglary, one count of second degree assault, one count of second degree kidnapping, and one count of violation of a restraining order.

> At trial, his defense was that he was too intoxicated to form specific intent.  The jury convicted defendant on all charges except second degree kidnapping.  Defendant was sentenced to two concurrent terms of life imprisonment for the murders, a concurrent term of thirty-two years for the burglary, a consecutive term of sixteen years for the assault, and a concurrent eighteen-month term for violating the restraining order.

*People v. Rosales*, No. 03CA0077, 134 P.2d 429, 431 (Colo. App. Aug. 11, 2005) (unpublished).

*          *          *

FN 2:  With respect to the instruction claim, as addressed in Applicant's direct appeal, the relevant portion of the CCA opinion is as follows:

IV.

> Defendant also contends that one of the jury instructions contained an incorrect statement of law regarding evidence of self-induced intoxication and that this deprived him of his due process right to require the prosecution to prove the elements of each crime beyond a reasonable doubt.  We are not persuaded.

A.

The instruction stated:

> You may consider evidence of self-induced intoxication in determining whether or not intoxication negates the existence of the particular states of mind "with intent" (which is also known as "specific intent") or "after deliberation with intent."

> The prosecution has the burden of proving all the elements of the crimes charges.  If you find the defendant was intoxicated to such a degree that he did not form the specific intent which is a required element of the crimes of First Degree Murder (Amended counts 1[,] 2, 3 and 4), First Degree Burglary (Count 5), and Second Degree Assault, (Count 7), you should find defendant not guilty of those charges.

Defendant did not object to the instruction.  To the contrary, defense counsel relied on the instruction during closing argument.

B.

Defendant makes three distinct arguments.  First, he argues that the phrase "you may consider evidence of self-induced intoxication" made consideration of the evidence of intoxication permissive rather than mandatory.

Second, he challenges the phrase "if you find the defendant was intoxicated to such a degree that he did not form the [requisite] specific intent . . . you should find the defendant not guilty of those charges." He argues that this phrase suggests that unless he proved beyond a reasonable doubt that he was so intoxicated as to be unable to form the requisite specific intent, the jury could not consider his intoxication.

Third, he argues that the instruction failed to inform the jury that self-induced intoxication was also relevant to its determination of whether the prosecution had proved all the elements of the two felony murder counts beyond a reasonable doubt.

C.

When a defendant does not object to a trial court's instruction, we apply a plain error standard in our review of the instruction.

> Plain error . . . requires a reasonable possibility that the
> alleged error contributed to the defendant's conviction.
> Thus, with respect to jury instructions, reversal under a plain
> error standard requires a defendant to "demonstrate not only
> that the instruction affected a substantial right, but also that
> the record reveals a reasonable possibility that the error
> contributed to his conviction."

People v. Garcia, 28 P.3d 340, 344 (Colo. 2001) (citations omitted;
quoting Bogdanov v. People, 941 P.2d 247, 255-56, amended, 955 P.2d
997 (Colo. 1997)).

When we review for plain error, "the instructions must be
considered as a whole to determine whether the jury was properly advised
as to the law."  Gann v. People, 736 P.2d 37, 39 (Colo. 1987).

### D.

Here, the same instruction informed the jury that "[t]he prosecution
has the burden of proving all the elements of the crime charged."  In
addition, the court instructed the jury that (1) defendant was entitled to the
presumption of innocence throughout the trial unless, "after considering all
of the evidence," the jury was convinced that defendant was guilty beyond
a reasonable doubt; (2) the "burden of proof is upon the prosecution
to prove to the satisfaction of the jury beyond a reasonable doubt the
existence of all of the elements necessary to constitute the crime
charged"; and (3) if the jury found that the prosecution "failed" to prove
any one or more of the elements beyond a reasonable doubt," it must find
defendant not guilty.  As to each crime charged and each lesser included
offense, the jury was also instructed that "[a]fter considering all the
evidence, if you decide the prosecution has failed to prove any one or
more of the elements beyond a reasonable doubt, you should find the
defendant not guilty" of the crime.  The latter instruction was repeated
twelve times.

We conclude that the instructions given in this case, viewed as
a whole, required the jury to consider all the evidence, including the
evidence of intoxication, as to each crime charged and each lesser
included offense, and ensured that the prosecution had the burden
to prove beyond a reasonable doubt that defendant acted with the
requisite intent.

Consequently, we conclude that the disputed instruction did not
constitute error affecting defendant's substantial rights.  See People v.

Petschow, 119 P.3d 495, 2004 WL 2136945 (Colo. App. No. 01CA1684
Sept. 23, 2004).

Rosales, 134 P.3d at 433-34.

With respect to the instruction, as addressed in Applicant's postconviction appeal
in relation to his ineffective assistance of counsel claim, the CCA found as follows:

> As a division of this court determined in defendant's direct appeal,
> the jury was properly instructed on the elements of the charges and that
> self-induced intoxication may be considered to negate the element of
> specific intent that the prosecution was required to prove beyond a
> reasonable doubt for many of the crimes.  See Rosales, 134 P.3d 433-34;
> see also People v. Miller, 113 P.3d 743, 751 (Colo. 2005); People v.
> Harlan, 8 P.3d 448, 475-76 (Colo. 2000).  We reject defendant's argument
> that the district court erred in denying his postconviction claim because it
> misconstrued Rosales; instead, defendant mischaracterizes the opinion.
> Although plain error was needed for reversal, the Rosales division's
> conclusion that the "disputed instruction did not constitute error affecting
> defendant's substantial rights" demonstrates that it would have reached
> the same result under a harmless error standard.  See Rosales, 134 P.3d
> 433-34; see also Crim P. 52(a) (harmless error is error that "does not
> affect substantial rights"); People v. Smith, 121 P.3d 243, 249 (Colo. App.
> 2005) (under either standard of plain error or harmless error, appellate
> court may consider entire record; the court need not decide which
> standard applies when reversal would not be required under higher
> standard of constitutional harmless error) . . . .

> Further, defendant fails to demonstrate an error in the instruction,
> or to offer a suggestion of how the jury might have been more accurately
> instructed on the law or how any different instruction would have resulted
> in a different outcome of the trial.  Similarly, defendant offers no support
> for the contention that the instruction reduced the prosecution's burden
> of proof.  The premise of his argument seems to be that evidence of
> self-induced intoxication required the jury to conclude that the prosecution
> failed to meet its burden of proving his specific intent.  However, that is not
> the law.  See § 18-1-804(1), C.R.S. 2008 . . . .

*Rosales*, No. 07CA1881 at 6-8.

\*          \*          \*

FN 3: The relevant portions of the CCA's decision with respect to the prosecutorial
misconduct claim, as addressed in Applicant's direct appeal, are as follows:

V.

Defendant next contends that improper closing argument by the prosecutor deprived him of his right to a fair trial and an impartial jury. We are not persuaded.

A.

In his initial closing, the prosecutor addressed specific intent by recounting in detail defendant's actions on the night of the crimes and urging the jury to consider what defendant was thinking each step of the way.  Defense counsel then argued, among other things, that defendant was extremely intoxicated and emotional and that he acted irrationally. Drawing language from the instruction defining "after deliberation," he suggested that defendant's conduct was hasty and impulsive and that the jury should return a conviction of second degree murder.

The prosecutors' rebuttal argument included the following:

The other factor [in defense counsel's argument] that the prosecution has strong disagreement with is that whenever we heard in terms of Mr. Rosales, they were happy they had champagne, they were happy, they had Gran Marnier, they were happy, they had beer.  What is the excuse that the defendant wants [you to] buy[?]  The defendant wants you to buy that the very thing that made him happy that he has been engaging in for over 10 years, that he bought a bar so he could be around alcohol, is the event that should excuse him for his actions.  You heard that he went to a couple of AA meetings.  You heard that he had problems in his life from alcohol, and now the defense want you to excuse it . . . .  What you will be telling him, what you will be validating if you find that alcohol negated his specific intent, is that he is not guilty of first-degree murder of any kind, not the felony murder.  He can't be found guilty of the felony murder because he was too drunk to intend to blow his way into that house and violate the restraining order and kill people.  He is not guilty of intentional murder after deliberation because he was too drunk to form the intent, and the deliberation . . . .  And he was too drunk to intend to kill [the victim].  That is the package you are buying if you buy the package in this case.

He is rewarded for the lifestyle choices, and every beer he had was an excuse for the murders, the excuse of killing two people November 9, 2001 . . . .

. . . .

If you say that that intoxication negates the ["]after deliberation["] and [defendant's counsel] wants to talk to you about the fact that when he put the gun to their heads, that was a hasty and impulsive act, do not confuse that hasty and impulsive with quick.  I mean, things can happen quickly, but it is a series of quick acts that go to ["]after deliberation.["]  What you are looking at in this case is whether Mr. Rosales' series of acts were hasty and impulsive or whether he made a judgment and decision on November 9 . . . .

. . . .

I don't know what he had to drink.  Best case scenario, if you are looking at that case, you have a 12–hour span with three beers and one line of cocaine and walk that out to the logical conclusion.

If you excuse him from first-degree murder for that, what you are saying is that every person in the community [who] has three beers and a line of coke can go and kill people and gee, because they decided [to] do that, that they are not accountable for first-degree murder, and they are not accountable for [the] execution they commit.

B.

On appeal, defendant acknowledges that his counsel did not object to the quoted argument on the grounds he now asserts.  He argues that the quoted portions of the prosecutor's argument were incorrect statements of law, contrary to § 18–1–804(1), C.R.S. 2004, and urged the jury to disregard the law as it related to the effect of intoxication on the ability to form specific intent, a blatant invitation to ignore the law on intoxication and its relationship to the state's burden of proof on specific intent offenses.

"The advocate's function is to present evidence and argument so that the cause may be decided according to the law."  Colo. RPC 3.5 cmt. 2.  Thus, a prosecutor is not permitted to present an argument that

42

is calculated to inflame the passions or prejudice of the jury, to divert the jury from its duty to decide the case on the evidence, to seek a conviction based on matters irrelevant to determination of the defendant's guilt, or to suggest that the jury ignore the law as reflected in the court's instructions. *People v. Dunlap*, 975 P.2d 723, 758 (Colo. 1999); *Harris v. People*, 888 P.2d 259 (Colo. 1995); *People v. Mandez*, 997 P.2d 1254 (Colo. App. 1999); *see State v. Hudson*, 86 Ohio App. 3d 113, 619 N.E.2d 1190 (1993); *Schmitt v. Commonwealth*, 262 Va. 127, 547 S.E.2d 186 (2001).

Allegations of improper argument must be evaluated in the context of the argument as a whole and in light of the evidence before the jury. *People v. Salyer*, 80 P.3d 831, 839 (Colo. App. 2003).

When, as here, prosecutorial misconduct is alleged, but was not preserved by contemporaneous objection, we will not consider it on appeal unless it was plain error affecting the substantial rights of the defendant. *People v. Constant*, 645 P.2d 843 (Colo. 1982). Prosecutorial misconduct constitutes plain error only when it is flagrant or glaringly or egregiously improper. *People v. Abiodun*, 87 P.3d 164 (Colo. App. 2003), *aff'd*, 111 P.3d 462 (Colo. 2005). Prosecutorial misconduct in closing arguments rarely constitutes plain error. *People v. Gordon*, 32 P.3d 575 (Colo. App. 2001).

C.

Here, we do not perceive the prosecutor's argument to have been calculated to inflame the passions or prejudice of the jury, to divert the jury from its duty to decide the case based on the evidence, or to suggest that the jury ignore the law or the court's instructions. However, it was improper for the prosecution to argue that a verdict acquitting defendant of first degree murder would reward defendant for drinking and indicate that it is permissible for every intoxicated person to commit murder and not be held accountable.

Nonetheless, when considered as a whole, the prosecutor's argument emphasized the overwhelming evidence that defendant had ample opportunity to deliberate, demonstrated rationality and intentional behavior, demonstrated dexterity indicative of sobriety, and shot the victims in a manner plainly calculated to cause their deaths. Therefore, we conclude that the improper portion of the argument does not constitute plain error affecting defendant's substantial rights.

*Rosales*, 134 P.3d at 434-36.

\*            \*            \*

FN 5: With respect to Applicant's ineffective assistance of counsel claims, the relevant portions of the CCA's analysis are as follows:

> To succeed on a claim of ineffective assistance of counsel, a defendant must prove by a preponderance of the evidence that (1) counsel's performance fell below the level of reasonably competent assistance demanded of attorneys in criminal cases and (2) the deficient performance resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-90; *Davis v. People*, 871 P.2d 769, 772 (Colo. 1994).

> To prove the first prong of the test, a defendant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance and show that, in light of all the circumstances of the case, counsel's identified acts or omissions were such that counsel's representation fell below an objective standard of reasonableness as informed by prevailing professional standards. *Strickland*, 466 U.S. at 689-90; *Davis*, 871 P.2d at 772. To prove the second prong of the test, a defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A "reasonable probability" in this context is a "probability sufficient to undermine confidence in the outcome" of the proceeding. *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003) (citing *Strickland*, 466 U.S. at 694).

> An ineffective assistance claim will not succeed if a defendant fails to prove either prong of the test. *Strickland*, 466 U.S. at 697; *People v. Garcia*, 815 P.2d 937, 941 (Colo. 1991); *People v. Gandiaga*, 70 P.3d 523, 526 (Colo. App. 2002). If the defendant fails to make an affirmative demonstration of prejudice, the district court may resolve the ineffective assistance claim on that basis alone, without considering whether counsel's performance was deficient. *People v. Vieyra*, 169 P.3d 205, 209 (Colo. App. 2007).

> When a claim of ineffective assistance is raised in a postconviction motion, a district court may deny relief without a hearing if the allegations are conclusory or the record clearly establishes that the defendant is not entitled to relief. *See Ardolino*, 69 F.3d at 77 (denial of postconviction claim for ineffective assistance of counsel without a hearing is justified if, but only if, the record establishes that defendant's allegations, even if proven true, would fail to establish one or the other prong of *Strickland* test); *Moore v. People*, 174 Colo. 570, 571-72, 485 P.2d 114, 115 (1971) ("[b]are allegations of incompetency of counsel are not sufficient to entitle a defendant to an evidentiary hearing"; defendant did not allege "how any

of these matters might have had any bearing on the outcome of the trial");
*People v. Lopez*, 12 P.3d 869, 871 (Colo. App. 2000).

*Rosales*, No. 07CA1881 at 3-5.

*                    *                    *

FN 6:  With respect to **subclaims i, ii, and iv**, in particular, the CCA found as follows:

III.  Claims Related to Matters of Trial Strategy

Defendant also contends counsel rendered ineffective assistance by failing to investigate and present additional evidence of his intoxication, including expert witness testimony, and by failing to present a heat of passion defense.  However, each of these arguments relates to matters of trial strategy, which is well recognized as the province of trial counsel. *See People v. Tackett*, 742 P.2d 957, 960 (Colo. App. 1987) (trial counsel stands as captain of the ship, and counsel's tactical and strategic choices are the exclusive province of counsel after consultation with the client).

Tactical and strategic choices are almost impervious to claims of ineffective assistance of counsel.  Mere disagreement as to trial tactics or strategy will not support a claim of ineffectiveness. *Davis*, 871 P.2d at 773 (citing *People v. Bossert*, 722 P.2d 998, 1010 (Colo. 1986), and *Strickland*, 466 U.S. at 690-91 (strategic choices are "virtually unchallengeable")).

Here, trial counsel was faced with a daunting set of facts. Defendant brutally beat his girlfriend, who testified at trial, and left her severely and permanently injured.  After that beating, defendant took a shotgun and a box of shotgun shells and drove to the apartment of his estranged wife.  He parked the car in a manner that facilitated a quick departure.  He made several phone calls to his wife but received no answer.  He then used two shots to disable two locks on the apartment door and entered the apartment, reloading the shotgun on his way to the bedroom.  Defendant shot his estranged wife in the head from one side of the bed, then moved to the other side of the bed and shot the man she had been dating, also in the head, killing both of them.  Defendant picked up the expended shotgun shells, left the apartment, and drove away, making several more phone calls as he drove.  When he was later arrested, defendant confessed to killing his estranged wife.  His defense at trial was that he was too intoxicated to form specific intent.

*Rosales*, No. 07CA1881 at 10-12.

Specifically addressing Applicant's investigation and interview claims, the CCA found as follows:

### A. Failure to Investigate and Present Additional Evidence

We reject defendant's contention that his counsel was ineffective for failing to present additional evidence concerning his level of intoxication.

Claims that counsel was ineffective for failure to investigate must be assessed for reasonableness under the circumstances, "applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. Counsel's decision not to interview certain witnesses and to rely on other sources of information, if made in the exercise of reasonable professional judgment, does not constitute ineffective assistance. *Davis*, 871 P.2d at 773. Faced with overwhelming evidence, counsel reasonably may conclude that "testimony of certain character witnesses would be of little help to the defense." *Id.*

Here, it is apparent that counsel investigated the intoxication issue and presented evidence that defendant was "severely intoxicated" when he committed the crimes and, he argued, incapable of forming the specific intent necessary to commit many of the crimes with which he was charged. However, what evidence to present and through which witnesses to present it are tactical decisions for trial counsel.

Defendant points to nothing that suggests counsel's performance fell outside the level of reasonable professional assistance required of criminal defense attorneys. As defendant asserts, counsel was aware of defendant's blood alcohol content (BAC) and the other witnesses to defendant's behavior that evening. Although defendant claims that counsel should have presented even more evidence of his intoxication, the record suggest that evidence of his BAC level and ability to function while drinking so heavily could have undercut his theory of defense because witnesses would have testified that defendant was able to function at a relatively high level when intoxicated. The reasonableness of counsel's strategic decision not to present this evidence trumps defendant's claim that counsel was professionally incompetent in so deciding. Moreover, the overwhelming evidence against defendant, including evidence regarding the precision with which he functioned while committing these crimes, supports the district court's conclusion that defendant failed to show prejudice. *See People v. Johnson*, 638 P.2d 61, 64 (Colo. 1981).

### B. Failure to Present Expert Witnesses

Defendant also contends the district court erred in denying his claim that trial counsel was ineffective for failing to present expert witnesses at the suppression hearing concerning his ability to waive his right to remain silent under *Miranda v. Arizona*, 384 U.S. 436 (1966), and failing to present expert witnesses at trial to testify concerning his BAC level and the overall effects of his "depression, cocaine usage, alcohol intake, and brain injury on his ability to form specific intent."

In this contention, as in many others, defendant does not provide a single citation to the record.  The dearth of citations to the record and legal authority in support of his arguments makes defendant's briefs on appeal noncompliant with CAR. 28(a)(4).  That alone provides a sufficient basis on which to affirm the denial of postconviction relief.  *See Maudlin v. Lowery*, 127 Colo. 234, 236, 255 P.2d 976, 977 (1953) (reviewing court "will not search through briefs to discover what errors are relied on, and then search through the record for supporting evidence"; it is counsel's task to inform court, as required by rules, as to specific errors relied on and grounds and supporting facts and authorities therefor).

In addition, it is axiomatic that we do not consider any documents attached to appellate briefs that were not presented to the district court and are not part of the record.  *See People v. Tucker*, 837 P.2d 1225, 1228 (Colo. 1992).  Defendants are precluded from using the appeal process to fortify postconviction claims.  *See Rodriguez*, 914 P.2d at 251 (because district court can summarily dismiss claims inadequately presented, consideration of such issues on appeal of district court's order would effectively grant defendant a successive Crim. P. 35(c) motion without also burdening him with harsher standard of review appropriate to a successive motion).  Accordingly, we will not consider the affidavits attached to defendant's opening brief.

We nevertheless review, and reject, defendant's contentions.  The transcript of the suppression hearing demonstrates that the district court considered evidence that, when he was arrested many hours after he committed the crimes, defendant had a BAC level of .359, more than three times the legal limit to operate a motor vehicle.  The court heard that he smelled of alcohol, staggered when he walked, and appeared to be intoxicated.  The court also heard testimony from the prosecution's expert witness, though it expressly did not base its ruling on the expert's opinion as to defendant's ability to make voluntary decisions.  The court was aware that the expert had not examined defendant.  Thus, assuming there was any error on the part of counsel, defendant failed to demonstrate prejudice from it.

With respect to alleged trial errors, the record supports the conclusion that counsel was aware of the evidence, had expert witnesses available, and made the reasonable tactical decision not to present them to the jury.

*Rosales*, No. 07CA1881 at 12-16.

*           *           *

FN 7:  Specifically addressing Applicant's right to testify claim, the CCA found as follows:

### V. Failure to Advise Defendant Prior to Waiving His Right to Testify

In his motion, defendant alleged that his attorney "coerced" him into waiving his right to testify because his attorney advised him that he "could not handle the questioning."  He further alleged that his girlfriend and his family also coerced him not to testify.  He claimed that he would not have given in to the coercion if he had known his attorney was going to call only one of seventeen witnesses that his counsel had previously endorsed.

On appeal, defendant narrows this claim, contending that his counsel was ineffective for failing to advise him, before he waived his right to testify, that only one of the seventeen listed defense witnesses would testify.  His claim is without merit.

Before making his decision, defendant was thoroughly advised of his rights to, and not to, testify.  *See People v. Curtis*, 681 P.2d 504 (Colo. 1984).  Though his counsel subsequently called only one witness, defendant did not thereafter inform the court that he wished to revisit his decision not to testify, despite his opportunity to do so.  Moreover, he stated in his motion that his family and his girlfriend "coerced" him not to testify.  Therefore, even assuming his counsel should have informed him that only one witness would be called to testify in his defense, defendant failed to establish any prejudice.

*Rosales*, No. 07CA1881 at 17-18.

A review of the trial transcripts indicates Applicant was instructed as follows by the trial court regarding his right to testify:

THE COURT: No. I think it is fair to Mr. Rosales for me to indicate what his rights are at this time and also then for him to have overnight and tomorrow to talk about this or think about it and talk about it with his attorneys.  And I am sure that his attorneys will go over this also with him.

But Mr. Rosales, first of all, I want to indicate to you that you do have a right to testify, and that right is solely your decision.  If you want to take the witness stand and testify in your case, nobody can prevent you from doing that.  Your attorneys may advise against that, or family members may advise you not to do it or recommend that you not do it.  But nevertheless, since it is your right, only you can exercise that right.  And if you tell me at the time that the defense is either going to call you or decide not to call you, that you want to testify, I will respect that right, and I will allow you to testify.  If you do decide to testify, like any other witness, you will be subject to cross-examination by the district attorney.  And again, like any other witness, if you are cross-examined, you may be asked about any felony convictions that you have, if you have one.  I don't know if you do or not, but if you have a felony conviction, you could be asked about whether you have ever been convicted of a felony.  That is true of any witness.  And if you do have a felony, the prosecution will also be entitled to ask you about what it was, and whether you pled guilty or whether you went to trial and were found guilty and can go into some detail about that.

Furthermore, you could also be asked about convictions, although not felonies, that was the result of dishonest conduct.  Again, this would be true of any witness, such as forgery, embezzlement, fraud, things that have an aura of dishonesty about them.  And although not felonies, the cross-examiner would be permitted to ask you about that.  And with regard to those kind of thingns [*sic*] or felony convictions, the purpose is to impeach your credibility.  In that event, I would then instruct the jury that they can only take those kind, or that kind of evidence into consideration for purposes of impeaching or deciding whether you're to [*sic*] believed or not, the credibility only.  And they can't infer bad character, or that you committed the offenses here just because you have a previous felony conviction or any other type of conviction.  Any questions so far?

THE DEFENDANT: No, I don't think so.

THE COURT: Now, by the same token, you could decide not to testify and you have the same right to say that you will not testify, and you are not -- you can't be forced to testify in your own case against you, even if your attorneys or friends or family are urging you to take the witness stand.  And if you decide, for whatever reasons or for no reason, that you don't want to do that again, I will make sure that that is your own decision and it is free of any pressures or coercion.  And it is your free will and choice, and that is your decision.  And that will be respected also.  If you decide not to take the witness stand and not to testify, then I will also instruct the jury, as I did at the very start of the case, I think you will recall, that they can't infer guilt on account of your refusing to testify.  They can't

hold that against you.  They can't suppose that you are hiding something you [*sic*] if you decide not to testify.

So again, you have the right to do either, and whichever decision that you make at the appropriate time in your own case, I will ask you what your decision [*sic*], and whatever that decision is, I will respect that decision.

THE DEFENDANT: I just -- I am just kind of wondering about it if I testify, and I say something, my version of the story, which is very different from some of the testimony that has come out, how does that happen? I mean, does it -- does the witness that was previously called get impeached because I say they are lying or, you know.

THE COURT: You know, I will give, as I gave the jury, an instruction at the start of the case, I will give an instruction at the end of the case also that the jury's determination of the credibility of any witness, you, if you decide to testify, and any previous witnesses that have already testified, is solely for their determination.  Who to believe is for the jury.

THE DEFENDANT: Okay.

Trial Tr., Nov. 19, 2002, at 198-201.

The trial court further advised and questioned Applicant as follows:

THE COURT: All right.  This is People versus Daniel Rosales. We are out of the presence of the jury, but we have Mr. Rosales and his attorneys present, and the district attorney.  At this time I am going to ask some questions of Mr. Rosales.  Mr. Rosales you understand that you have a right to testify or not to testify, as we discussed yesterday afternoon; is that right?

THE DEFENDANT: Yes.

THE COURT: All right.  And have you made a decision in that regard?

THE DEFENDANT: Yes, I have.

THE COURT: What is your decision?

THE DEFENDANT: I am deciding not to take the stand.

THE COURT: All right, now.  You understand that if you want to take the stand that no one can prevent you from taking the stand, regardless ever what [*sic*] your attorney may advise or anyone else may advise?

THE DEFENDANT: Yes, I understand that.

THE COURT: And is you are [*sic*] decision not to take the witness stand entirely your own free will decision?

THE DEFENDANT: That is correct.

THE COURT: There has been no pressure put on you or any kind of coercion exercised on your decision?

THE DEFENDANT: No, sir.

THE COURT: You understand that if you were to elect to take the witness stand, and you have been convicted of a felony, which I don't know whether you have or not, but for any witness, if you have been convictd [*sic*] of a felony, the prosecution asks you about that and discloses it to the jury.

THE DEFENDANT: I understand.

THE COURT: And you further understand that in that event, the prosecution could also ask you whether that conviction was by a guilty plea or whether you were found guilty at trial, and some of the background of that conviction if it existed?

THE DEFENDANT: Yes, I understand.

THE COURT: But in that event, I would tell the jury that they can consider any prior convictions or any prior not felony convictions that involved a crime of dishonesty, that they could only consider any convictions of that sort for the purpose of deciding your credibility.  They could not use it to infer that you committed any crime for which you were charged in this Court.  Do you understand that?

THE DEFENDANT: Yes I do.

THE COURT: All right.  And you understand that the decision of whether to testify with those circumstances in mind, or whether or not to testify, is entirely your own decision and no one else came [*sic*] make that for you.

THE DEFENDANT: Yes.

THE COURT: Mr. Rosales, do you have any questions about this advisement, at all?

THE DEFENDANT: Not at this time.

THE COURT: Your decision is still that you elect not to testify?

THE DEFENDANT: That is correct.

THE COURT: You understand that by electing not to testify, that I will instruct the jury that they may not infer guilt on account of you are [*sic*] decision to exercise your right not to testify?

THE DEFENDANT: Okay.  I understand.

THE COURT: Do you have any questions at all for me about that?

THE DEFENDANT: No, I don't.

Trial Tr., Nov. 20, 2002, at 2-4.

*          *          *

FN 8: The following is the CCA's analysis and ruling on Applicant's contention that the trial court erred in giving the intoxication instruction and in denying his claim that counsel was ineffective for failing to object to the prosecutor's argument concerning the intoxication defense:

A. Jury Instruction on Intoxication

Defendant contends the district court erred in denying his claim that counsel was ineffective for failing to object to the jury instruction on self-induced intoxication.  We disagree.

As a division of this court determined in defendant's direct appeal, the jury was properly instructed on the elements of the charges and that self-induced intoxication may be considered to negate the element of specific intent that the prosecution was required to prove beyond a reasonable doubt for many of the crimes.  *See Rosales*, 134 P.3d at 433-34; *see also People v. Miller*, 113 P.3d 743, 751 (Colo. 2005); *People v. Harlan*, 8 P.3d 448, 475-76 (Colo. 2000).  We reject defendant's argument that the district court erred in denying his postconviction claim because it misconstrued *Rosales*; instead, defendant mischaracterizes the opinion.

52

Although plain error was need for reversal, the *Rosales* division's conclusion that the "disputed instruction did not constitute error affecting defendant's substantial rights" demonstrates that it would have reached the same result under a harmless error standard.  *See Rosales*, 134 P.3d at 433-34; *see also* Crim. P. 52(a) (harmless error is error that "does not affect substantial rights"); *People v. Smith*, 121 P.3d 243, 249 (Colo. App. 2005) (under either standard of plain error or harmless error, appellate court may consider entire record; the court need not decide which standard applies when reversal would not be required under higher standard of constitutional harmless error).  Thus, defendant's argument that the conclusion on direct appeal would have been different if only counsel had objected and the claim were reviewed for harmless error is without merit.

Further, defendant fails to demonstrate an error in the instruction, or to offer a suggestion of how the jury might have been more accurately instructed on the law or how any different instruction would have resulted in a different outcome of the trial.  Similarly, defendant offers no support for the contention that the instruction reduced the prosecution's burden of proof.  The premise of his argument seems to be that evidence of self-induced intoxication *required* the jury to conclude that the prosecution failed to meet its burden of proving his specific intent.  However, that is not the law.  *See* § 18-1-804(1), C.R.S. 2008.  Even assuming an objection to the instruction would have been sustained, defendant has not shown that counsel's failure to object amounted to professional incompetence or that, in light of all of the instructions and circumstances, the outcome would have been different but for the failure to object.

The record supports the conclusion that trial counsel was not ineffective for failing to object to the instruction on self-induced intoxication.

## B. Closing Argument

Defendant contends the district court erred in denying his claim that counsel was ineffective for failing to object to the prosecutor's argument concerning the intoxication defense.  We are not persuaded.

The propriety of the prosecutor's closing argument was also an issue on direct appeal.  *See Rosales*, 134 P.3d at 434-36.  In *Rosales*, the division concluded that it was improper for the prosecutor to argue that a verdict acquitting defendant would reward him for drinking and indicate that it is permissible for every intoxicated person to commit murder without being held accountable.  *Id.* at 436.  The division determined, however, that the argument overall "emphasized the overwhelming evidence that

defendant had ample opportunity to deliberate, demonstrated rationality and intentional behavior, demonstrated dexterity indicative of sobriety, and shot the victims in a manner plainly calculated to cause their deaths." *Id.* The improper portion of the argument did not constitute plain error.

Considered in the context of this appeal, although trial counsel might have successfully objected to this portion of the prosecutor's argument, defendant has not demonstrated that counsel acted outside the realm of constitutionally permissible representation by *not* objecting. Counsel may choose not to object in order to maintain credibility with the jury and to avoid calling attention to the objectionable material. *See Dunlap v. People*, 173 P.3d 1054, 1081 (Colo. 2007); *People v. Sparks*, 914 P.2d 544, 548 (Colo. App. 1996).

Moreover, assuming counsel's failure to object could be deemed to fall below the realm of reasonable professional assistance, the record supports the conclusion that the overwhelming evidence against defendant prevented him from proving prejudice from that omission. *See Dunlap*, 173 P.3d at 1081 n. 30.

*Rosales*, No. 07CA1881 at 6-10.